IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

APPELLATE DOCKET NO. 17-2461

SANTINO P. v. PENNSYLVANIA DEPARTMENT OF EDUCATION

---

ON APPEAL FROM A CIVIL RIGHTS ACTION IN THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA,
DOCKET NO. 2:16-cv-05230-GJP

BRIEF FOR APPELLANT AND APPENDIX
VOLUME I (PAGES 1a-17a)

ORAL ARGUMENT REQUESTED

Dennis C. McAndrews, Esquire
ID No. 28012
Michael E. Gehring, Esquire
ID No. 57224
Michael J. Connolly, Esquire
ID No. 82065

McANDREWS LAW OFFICES
30 Cassatt Avenue
Berwyn, Pennsylvania 19312
610-648-9300 (telephone)
610-648-0433 (fax)

Attorneys for Appellants

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES                                                    i

STATEMENT OF JURISDICTION                                              1

STATEMENT OF ISSUE PRESENTED FOR REVIEW                               2

STATEMENT OF RELATED CASES AND PROCEEDINGS                            2

STATEMENT OF THE CASE                                                 3

SUMMARY OF ARGUMENT                                                   7

ARGUMENT                                                              9

      THE DISTRICT COURT MADE A CLEAR ERROR OF LAW
      WHEN IT HELD THAT PLAINTIFFS WERE NOT ELIGIBLE
      TO OBTAIN REASONABLE ATTORNEYS' FEES FROM PDE
      AS A PREVAILING PARTY IN THE DUE PROCESS HEARING.    9

      A.    Scope and Standard of Review.                    9

      B.    State Educational Agency Liability under IDEA.    10

      C.    Plaintiffs Are the Prevailing Parties, and Eligible
              for  an Award of Reasonable Attorneys' Fees
              As Against PDE.                                  19

      D.    The District Court Committed a Clear Error of Law
              When It Found That the Availability of Statutory
              Attorneys' Fees Is not an Integral Component of
              IDEA's Remedial Statutory Scheme.                26

CONCLUSION                                                           41

## ATTACHMENTS

COMBINED CERTIFICATIONS

1. Bar Membership
2. Word Count and Typeface Requirements
3. Service
4. Identical Compliance with Briefs
5. Virus check

APPENDIX VOLUME I (Pages 1a-17a)

Table of Contents

Notice of Appeal                                              1a

District Court's June 15, 2017 Order Denying Plaintiffs'
Motion for Summary Judgment and Granting Defendant's
Cross-Motion                                                 3a

District Court's June 15, 2017 Memorandum                    4a

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Alexander v. Riga, 208 F.3d 419 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 25

American Fed. of Gov't Employees, AFL-CIO, Local 3382 v. Federal
Labor Relations Auth., 994 F.2d 20 (D.D.C. 1993) . . . . . . . . . . . . . . . . . . . 29-30

Becker v. Mack Trucks, Inc., 281 F.3d 372 (3d Cir. 2002). . . . . . . . . . . . . . . . 10

Bly v. Banbury Books, Inc., 638 F. Supp. 983 (E.D. Pa. 1986) . . . . . . . . . . . . . 25

Bochart v. Wayne, 2017 WL 1536399 (D. Mass. April 27, 2017) . . . . . . . . . . 36

Briggs v. District of Columbia, 102 F. Supp.3d 164 (D.D.C. 2015) . . . . . . . . . 29

Charlene R. v. Solomon Charter School, 63 F. Supp.3d 510
(E.D. Pa. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13-16, 24, 26

Cordero v. Pennsylvania Dep't of Educ., 795 F. Supp. 1352 (M.D. Pa. 1992) . . 11

Curtis K. v. Sioux Comm. School Dist., 895 F. Supp. 1197
(N.D. Iowa 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 30-31, 33

Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119 (1st Cir. 2004) . . . . . . . . . . . . 36

Disabled Patriots of America, Inc., 659 F. Supp.2d 877 (N.D. Ohio 2009) . . . . 37

Doe v. Maher, 793 F.2d 1470 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Dorr v. Weber, 741 F. Supp.2d 1022 (N.D. Iowa 2010) . . . . . . . . . . . . . . . . . . . 40

EEOC v. Freeman, 126 F. Supp.3d 560 (D. Md. 2015) . . . . . . . . . . . . . . . . . . . 36

Faulk v. Duplantis, 2015 WL 3539637 (E.D. La. June 4, 2015) . . . . . . . . . . . . 37

**CASES** <span style="float:right">**PAGE(S)**</span>

Flaum v. Gloucester Lanes, Inc., 2015 WL 364603 (E.D. Va. Jan. 27, 2015) . . . 37

Fountenot v. Louisiana Bd. of Elementary and Secondary Educ.,
805 F.2d 1222 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Gadsby v. Grasmick, 109 F.3d 940 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . 11

Garvin v. District of Columbia, 910 F. Supp.2d 135 (D.D.C. 2012) . . . . . . . . . . 29

Gibson v. City of Chicago, 873 F. Supp.2d 975 (N.D. Ill. 2012) . . . . . . . . . . . 33

Pickett v. Sheridan Health Care Ctr., 664 F.3d 632 (7th Cir. 2011) . . . . . . . . . . 33

H.E. v. Walter D. Palmer Leadership Learning Partners Charter School,
220 F. Supp.3d 574 (E.D. Pa. Oct. 27, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

H.E. v. Walter D. Palmer Leadership Learning Partners Charter School,
__ F.3d __, 2017 WL 4532207 (3d Cir. Oct. 11, 2017) . . . . . . . . . . . . . . . . . . 19

H.E. v. Walter D. Palmer Leadership Learning Partners Charter School,
slip op. (E.D. Pa. Jan. 5, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hensley v. Eckerhart, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

In re: Cmty. Bank, 418 F.3d 277 (3d Cir. 1005) . . . . . . . . . . . . . . . . . . . . . . . . . 33

Jodlowski v. Valley View Comm. Unit School Dist. No. 365-U,
109 F.3d 1250 (7th Cir. 1997)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Johnson v. New Miami Local School District Board of Educ.,
2016 WL 5122536 (S.D. Ohio Sept. 21, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jones v. District of Columbia, 153 F. Supp.3d 114 (D.D.C. 2015) . . . . . . . . 29, 36

Kay v. Ehrler, 499 U.S. 432 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**CASES**                                                              **PAGE(S)**

Kelsey v. District of Columbia, 219 F. Supp.3d 197 (D.D.C. 2016) . . . . . . . . . . 30

Kentucky v. Graham, 473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Kruelle v. New Castle Cnty. School Dist., 642 F.2d 687 (3d Cir.1981) . . . . . . . 14

M.R. v. Ridley School District, 868 F.3d 218 (3d Cir. 2017) . . . . . . 13, 19, 24, 28

Maguire v. Hughes Aircraft Corp., 912 F.2d 67 (3d Cir. 1990) . . . . . . . . . . . . . 10

Martin v. Hancock, 466 F. Supp. 454 (D. Minn. 1979) . . . . . . . . . . . . . . . . . . . 37

McCampbell v. Chrysler Corp., 425 F. Supp. 1326 (E.D. Mi. 1977) . . . . . . . . . 40

New Jersey Coalition of Rooming and Boarding House Owners v.
Mayor and Council of the City of Asbury Park,
152 F.3d 217 (3d Cir. 1998)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 36, 37

Newman v. Piggie Park Enterprises, 390 U.S. 400 (1968) . . . . . . . . . . . . . . . . . 34

P.D. v. Mt. Vernon Comm. School Corp., 2008 WL 1701877
(S.D. Ind. April 10, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Pickett v. Sheridan Health Care Ctr., 664 F.3d 632 (7th Cir. 2011) . . . . . . . . . 33

R.J. v. Rivera, 2017 WL 3413005 (E.D. Pa. Aug. 9, 2017) . . . . . . . . . . . . . 17, 21

R.V. v. Rivera, 220 F. Supp.3d 588 (E.D. Pa. 2016) . . . . . . . . . . . . . . . . . . . . . 17

Roccisano v. Township of Franklin, 2015 WL 3649149
(D.N.J. June 11, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Smith v. Robinson, 468 U.S. 992 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Tammany Parish School Bd. of Louisiana, 142 F.3d 776 (5th Cir. 1998) . . . . . 14

**CASES**                                                                 **PAGE(S)**

Vander Malle v. Ambach, 673 F.2d 49 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . 15

Ward v. Philadelphia Parking Auth., 2015 WL 263733
(E.D. Pa. Jan. 21, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Washington v. Philadelphia Court of Common Pleas,
89 F.3d 1031 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**FEDERAL STATUTES**

20 U.S.C. § 1400 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

20 U.S.C. § 1400(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

20 U.S.C. § 1400(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

20 U.S.C. § 1400(d)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20 U.S.C. § 1400(d)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

20 U.S.C. § 1401(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20 U.S.C. § 1412(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20 U.S.C. § 1412(a)(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

20 U.S.C. § 1412(a)(11)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

20 U.S.C. §§ 1412-1414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20 U.S.C. § 1413(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20 U.S.C. § 1413(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

20 U.S.C. § 1415(b)(6)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL STATUTES**                                                    **PAGE(S)**

20 U.S.C. § 1415(i)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18, 27

20 U.S.C. § 1415(i)(3)(B)(i)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-33

**FEDERAL REGULATIONS**

34 C.F.R. § 300.100 <u>et. seq.</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

34 C.F.R. § 300.209(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

34 C.F.R. § 330.517 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**PENNSYLVANIA REGULATIONS**

22 Pa. Code Chapters 14 and 711 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**LEGISLATIVE MATERIALS**

S. Rep. No. 94–1011 (1976), U.S. Code Cong. & Admin. News 1976 . . . . . 34-35

S. Rep. No. 99-1122 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

132 Cong. Rec. S. 9277 (July 17, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**OTHER AUTHORITY**

United States Department of Education, Office of Special Education and
Rehabilitative Services, "Dear Colleague" letter (August 5, 2016) . . . . . . . . . . 31

# STATEMENT OF JURISDICTION

This matter is an appeal from a final order of the Honorable Gerald J. Pappert of the United States District Court for the Eastern District of Pennsylvania. Judge Pappert by Memorandum and Order dated June 15, 2017 ("Memorandum") (3a-17a),[1] granted the Motion for Summary Judgment filed by Defendant Pennsylvania Department of Education ("PDE" or the "Department"), and denied the Cross-Motion for Summary Judgment filed by Plaintiff Santino P., by and through his Parent Joseph P. ("Plaintiffs" or "Appellants").

This appeal raises issues regarding whether the District Court committed legal error in entering judgment against Plaintiffs on their claims brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"). The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 because this case raised federal questions under IDEA. This Court has appellate jurisdiction pursuant to 29 U.S.C. § 1291, because this appeal is from a final order of the District Court.

Following entry of the District Court's final order on June 17, 2017 (3a), Plaintiffs filed their Notice of Appeal on July 6, 2017 (1a), within the 30-day appeal period.

---

[1]    References to the Appendix will be cited "____a." "

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

Whether the lower court erred as a matter of law in finding that Plaintiffs are not eligible to seek an award of reasonable attorneys' fees and costs from PDE in connection with special education due process proceedings under IDEA involving a now-defunct public charter school where Plaintiffs were the prevailing parties in those proceedings, and where PDE, as the responsible State Educational Agency under IDEA, has ultimate responsibility to fulfill all IDEA-mandated obligations of the charter school as the non-prevailing party?[2]

SUGGESTED ANSWER: Yes.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This matter has not previously been before this Court.  Plaintiffs are unaware of any other case or proceeding that is related to the present case.  However, PDE has been a defendant in several other cases that have involved similar issues regarding PDE's statutory obligations to disabled students of failed charter schools.  Those cases are cited and discussed *infra*.

---

[2]    This issue and the sub-issues presented herein, were raised and preserved in the Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment (at pages 5-17), and in Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment (at pages 3-14).

## STATEMENT OF THE CASE

This matter is in the nature of a request for reasonable attorneys' fees and costs as the prevailing party, following a special education due process proceeding and January 12, 2015 decision ("Decision") (57a-59a) of a Pennsylvania Special Education Hearing Officer, that ordered the Walter D. Palmer Charter School ("Charter School") to pay for an Independent Educational Evaluation ("IEE") that Santino's father ("Parent") obtained, and further ruled that Santino's Parent is the prevailing party.

Plaintiff Joseph P. is the father of Santino P.  (Stipulated Facts, ¶ 4 (44a)). Santino P. is eligible for special education services pursuant to IDEA. (Id. ¶ 5 (45a)).

Defendant PDE is Pennsylvania's State Education Agency ("SEA") within the meaning of the IDEA.  (Id. ¶ 6) (45a).  PDE receives federal financial assistance. (Id. ¶ 7 (45a)).

The Charter School was a public charter school in Philadelphia County until approximately December 31, 2014, when the Charter School permanently closed. (Id. ¶ 8 (45a)).  While in operation, the Charter School was a Local Education Agency ("LEA") within the meaning of the IDEA.   (Id. ¶ 9 (45a)).  The Charter School received federal financial assistance.  (Id. ¶ 10 (45a)).

Santino P. enrolled in the Charter School in October 2013 and was an eighth grade student during the time of the initial proceedings regarding the Parent's request

for an IEE. (Id. ¶ 11 (45a)).    Santino is diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), Mood Disorder, Disruptive Behavior Disorder, Emotional Disorder, and Oppositional Defiant Disorder (ODD).  He received special education services under an Emotional Disturbance classification.  (Id. ¶ 12 (45a-46a)).

In March 2014, the Charter School approved the Parent's request for an IEE at public expense to determine Santino's current level of functioning and agreed that Dr. Kara Schmidt, a certified neuropsychologist, would conduct the evaluation.  (Id. ¶ 13 (46a)).    On April 23, 2014, David Weathington, CEO of the Charter School, acknowledged in writing the Charter School's obligation to pay Dr. Schmidt for completing an independent neuropsychological evaluation for Santino.  (Id. ¶ 14 (46a)).

Dr. Schmidt completed the independent neuropsychological report for Santino in August 2014.  (Id. ¶ 15 (46a)).    On or around August 24, 2014, Dr. Schmidt submitted to Dr. Weathington an invoice totaling $4,000.00 for services rendered.  (Id. ¶ 16 (46a)).  As of December 4, 2014, Dr. Schmidt had not received payment for her services from the Charter School.  Therefore, on that same date, the Parent filed a due process complaint with the Office for Dispute Resolution ("ODR") against the Charter School pursuant to the IDEA, seeking full payment for the independent neuropsychological evaluation and reasonable attorneys' fees and costs.  (Id. ¶¶ 17,

4

20 (46a, 47a); Due Process Complaint at 2 (53a)).  Because the Charter School, which was Santino's LEA, still existed, PDE was not made a party to the due process complaint and was otherwise not involved in the ODR matter.  (Stipulated Facts ¶ 19 (46a)).

In lieu of an evidentiary hearing, the Parent and the Charter School, through their respective attorneys, submitted Stipulations of Fact to the presiding Special Education Due Process Hearing Officer and asked that the Hearing Officer issue a ruling as a matter of law without conducting an evidentiary hearing.  (Id. ¶ 21 (47a)). The Hearing Officer agreed that this was a reasonable way to proceed given that the facts were not in dispute.  (Decision at 2 (58a)).  In her Decision dated January 12, 2015, the Hearing Officer granted full relief to the Family, ordering: "Walter D. Palmer Leadership Learning Partners Charter School shall pay Dr. Kara Schmidt the amount of $4,000.00 for the completion of the Independent Education Evaluation. The Parent is the prevailing party in this action."  (Stipulated Facts ¶ 22 (47a); Decision at 3 (59a)).

The Charter School ceased operations in December of 2014 and therefore was unable to comply with the Hearing Officer's Decision and Order.  (Stipulated Facts ¶ 23 (47a)).  On June 23, 2015, counsel for Parent notified PDE of the failure of the Charter School to implement the Hearing Officer's order of payment of the IEE for Santino, and requested that PDE implement the Hearing Officer's Decision and pay

the Family's reasonable attorneys' fees and costs. (Id. ¶ 24 (47a)).  On June 26, 2015, Parent's counsel submitted to PDE the Hearing Officer's decision and order and copies of the invoices for the independent evaluation to PDE via email, and further requested payment of estimated attorneys' fees incurred to date at about $7,505.08. (Id. ¶ 25 (47a); 6/26/15 e-mail (61a)).  By email dated July 2, 2015, Parent's counsel forwarded a final invoice for attorneys' fees to PDE seeking payment of fees in a revised amount of $6,322.55.  (Stipulated Facts ¶ 26 (48a); 7/2/15 e-mail (63a)).

PDE, through its Director of the Bureau of Special Education ("BSE"), sent a response letter dated July 13, 2015 to Parent stating: "In light of the closure of the [Charter School], the BSE has arranged for the payment of the IEE as ordered by the hearing officer."  (Stipulated Facts ¶ 27 (48a); 7/13/15 letter (65a)).  By letter dated July 17, 2015, PDE forwarded a copy of PDE's July 13, 2015 letter to Parent's Counsel.  (Stipulated Facts ¶ 28 (48a); 7/17/15 letter (66a)).  In this letter, Assistant Chief Counsel for PDE acknowledged PDE's obligation to provide special education and related services to an eligible student under IDEA where an LEA cannot or will not provide such services, but stated: "In regard to the request that the Department pay attorneys' fees/costs associated with the due process matter…the Department has no obligation to pay fees/costs related to the charter school's failures." (7/17/15 letter (66a)).

On October 3, 2016, Plaintiffs filed in the United States District Court for the

Eastern District of Pennsylvania their Complaint against PDE seeking reimbursement for its reasonable attorneys' fees and costs (22a-31a), and the case was assigned to Judge Pappert. PDE filed its Answer (32a-40a) on December 19, 2016. The parties thereafter filed Cross-Motions for Summary Judgment based on stipulated facts. Following oral argument on May 18, 2017 (67a-152a), the District Court issued its Memorandum and Order dated June 15, 2017 (3a-17a), which denied Plaintiff's Motion and granted PDE's Motion. Plaintiffs filed their timely Notice of Appeal (1a) on July 6, 2017.

## SUMMARY OF ARGUMENT

Because the Hearing Officer ordered that the Charter School provide Plaintiffs with all the relief they sought through those proceedings, i.e., payment for Dr. Schmidt's IEE, Plaintiffs were the admitted prevailing parties in the administrative due process matter as against the Charter School. Under IDEA, PDE, as Santino's State Educational Agency, or SEA, legally assumed the statutory obligations of the Charter School when the Charter School failed and became unable to fulfill its obligations, including the payment of reasonable attorneys' fees as the non-prevailing party. PDE's obligations as SEA, in conjunction with the Hearing Officer's decision granting Plaintiffs relief on the merits, changed the legal relationship between Plaintiffs and PDE and renders Plaintiffs the prevailing parties as against PDE. This

conclusion is clearly reinforced by public policy considerations, because disallowing awards of attorneys' fees where a public charter school becomes defunct would result in families of disabled children enrolled in charter schools, which can and do suddenly cease to exist, being afforded far fewer rights under IDEA than families of children enrolled in public school districts, and would negatively impact the availability of skilled legal counsel to students with disabilities enrolled in charter schools. Public policy dictates that the cost of legal counsel incurred by families of disabled children who prevail in due process proceedings against public charter schools that subsequently fail should not be borne by such families, but by PDE, which through its policies has actively encouraged the growth of such charter schools.

The District Court's finding that the availability of an award of attorneys' fees to a prevailing party is not an integral aspect of IDEA's statutory scheme is a clear error of law. Numerous courts, including the Supreme Court of the United States and this Court, have recognized that the availability of fee-shifting is an essential and integral element of IDEA and other federal statutory schemes that protect civil rights. The District Court's finding that fee-shifting is not integral to IDEA's remedial scheme on the basis that it is "discretionary" has no support in the law. Indeed, courts have recognized that fee-shifting under IDEA and other "discretionary" fee-shifting statutes is not, in fact, discretionary, but is virtually mandatory except in very limited circumstances. Therefore, the District Court's finding that the availability of fee-

shifting is not integral to IDEA is entirely premised on a clear error of law.

## ARGUMENT

**THE DISTRICT COURT MADE A CLEAR ERROR OF LAW WHEN IT HELD THAT PLAINTIFFS WERE NOT ELIGIBLE TO OBTAIN REASONABLE ATTORNEYS' FEES FROM PDE AS A PREVAILING PARTY IN THE DUE PROCESS HEARING.**

This case involves "more than simply the question of whether one attorney will get paid for services rendered, and instead raises serious repercussions for the vindication of rights of disabled children to obtain an appropriate public education." Curtis K. v. Sioux Comm. School Dist., 895 F. Supp. 1197, 1200 (N.D. Iowa 1995) (addressing issue of correct statute of limitations for actions seeking award of statutory attorneys' fees under IDEA). The District Court found that Plaintiffs, having retained an attorney and prevailed in the due process proceedings, are not eligible to even *seek* an award of reasonable attorneys' fees from PDE for two equally erroneous reasons: (a) that Plaintiffs, while admittedly the prevailing parties in the due process proceedings, are not prevailing parties against PDE; and (b) that the availability of an award of attorneys' fees to a parent who is a prevailing party in a due process proceeding is not an "integral" aspect of IDEA's statutory scheme. Both bases for the District Court's decision are clearly incorrect, and reversal is warranted.

### A.    Scope and Standard of Review.

When an appeal is taken from the grant of summary judgment, this Court's

review is plenary. <u>Maguire v. Hughes Aircraft Corp.</u>, 912 F.2d 67, 69 (3d Cir. 1990).

Moreover, because the parties' cross-motions for summary judgment were submitted

with a set of stipulated facts, the resolution of this matter presents a pure question of

law. <u>Becker v. Mack Trucks, Inc.</u>, 281 F.3d 372, 377 (3d Cir. 2002).

## B.    <u>State Educational Agency Liability under IDEA.</u>

IDEA and the regulations thereunder, 34 C.F.R. § 300.100 <u>et. seq.</u>, and 22 Pa.

Code Chapters 14 and 711, require that Local Educational Agencies ("LEAs"),

including public charter schools, must provide disabled children with a free

appropriate public education ("FAPE"), as well as provide extensive due process

procedures to effectuate that right.  The purpose of IDEA is to ensure that "all

children with disabilities have available to them a free and appropriate public

education that emphasizes special education and related services designed to meet

their unique needs and prepare them for further education, employment, and

independent living."  20 U.S.C. § 1400(d)(1)(A).  A "free appropriate public

education" is defined within IDEA as special education and related services that: (a)

have been provided at public expense, under public supervision and direction, and

without charge; (b) meet the standards of the SEA; (c) include an appropriate

preschool, elementary school, or secondary school education in the State involved;

and (d) are provided in conformity with the individualized education program

required under section 1414(d).  20 U.S.C. § 1401(9).

In order to receive federal money under the IDEA, a *state* must submit a plan of compliance to the state Secretary of Education. 20 U.S.C. §§ 1412-1414. IDEA then places on the SEA the responsibility of apportioning the funds to LEAs, whereby the LEAs apply to the SEA in order to receive that funding. 20 U.S.C. § 1413(a). "The SEA is responsible for ensuring that LEAs comply with the mandates of the IDEA in providing educational services to those eligible students." Charlene R. v. Solomon Charter School, 63 F. Supp.3d 510, 513 (E.D. Pa. 2014) (citing 20 U.S.C. § 1412(a)(11)(A)). Thus, "'IDEA delegates supervisory authority *to the SEA*, which is responsible for administering funds, setting up policies and procedures to ensure local compliance with IDEA, and filling in for the LEA by providing services directly to students in need where the LEA is either unable or unwilling to establish and maintain programs in compliance with IDEA.'" Charlene R., 63 F. at 513 (quoting Gadsby v. Grasmick, 109 F.3d 940, 943 (4th Cir. 1997)) (emphasis added); 20 U.S.C. §§ 1412(a), 1413(g).

The court in Cordero v. Pennsylvania Dep't of Educ., 795 F. Supp. 1352 (M.D. Pa. 1992) clearly held that PDE had primary responsibility to ensure that disabled children are provided the protections guaranteed by IDEA. While noting that individual school districts (and by extension, charter schools), are "to be the front line providers of care and education[,]" the court found that the "state has a central

function in the educational scheme envisioned by the IDEA...." Id. at 1356.  The court emphatically rejected PDE's argument that the "Commonwealth's duties under the IDEA essentially [are] providing funds, promulgating regulations and reviewing individual complaints." Id. at 1361. The court found:  "As defined by the IDEA, the state's role amounts to more than creating and publishing some procedures and then waiting for the phone to ring. *The IDEA imposes on the state an overarching responsibility to ensure that the rights created by the statute are protected, regardless of the actions of local school districts*." Id. (emphasis added).  Indeed, "[t]he violation of even one child's rights under the Act is sufficient to visit liability on the state. This is a proposition that has been reiterated time and again." Id. at 1363.

Pursuant to the above authority, PDE, as the SEA, is required to provide FAPE to a student when an LEA is unable or unwilling to provide FAPE to which a student is entitled. 20 U.S.C. § 1413(g). See also 20 U.S.C. § 1412(a)(11). Indeed, PDE has so admitted.  (PDE Answer ¶¶ 4, 28 (34a, 38a)).

In addition to conferring on disabled children a substantive right to a FAPE, IDEA also provides for significant procedural protections, including the right to participate in a special education due process hearing to seek relief "with respect to any matter relating to the identification, evaluation, or educational placement of the

child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). As a fundamental substantive entitlement of this scheme, IDEA provides for recovery of reasonable attorneys' fees and costs by parents who prevail in an action or proceeding thereunder. 20 U.S.C. § 1415(i)(3)(B); 34 C.F.R. § 330.517; M.R. v. Ridley School District, 868 F.3d 218, 227 (3d Cir. 2017).

The court's decision in Charlene R. v. Solomon Charter School, 63 F. Supp.3d 510 (E.D. Pa. 2014) clearly sets forth PDE's obligations in a case where, as in the present matter, a charter school that failed to provide IDEA's mandate to a disabled student ceases to function. The court set forth the issue as follows:

> The case before this Court raises important questions regarding whether a resolution agreement between a child and a charter school reached pursuant to [IDEA] should be enforceable against the Commonwealth of Pennsylvania's Department of Education, as the State Education Agency, where the charter school has become insolvent and has ceased to exist, *leaving the child with nowhere else to turn to vindicate his right to a free appropriate public education.* I conclude that such an agreement can be enforced against the Commonwealth in this limited scenario.

Id. at 511-12 (emphasis added).

The court initially analyzed the liability of the Commonwealth as the SEA under 20 U.S.C. § 1412(a)(11)(A), which provides:

The State educational agency is responsible for ensuring that-

(i) the requirements of this subchapter are met;

(ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency--

(I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and

(II) meet the educational standards of the State educational agency.

The court noted that the "Third Circuit has analyzed the intent of Congress in enacting this provision, concluding that it reflects the 'state's *primary responsibility* to provide a publicly-supported education for all children and a specific intent to centralize this responsibility.' Specifically, after examining the legislative history, the [Third] Circuit concluded that Congress 'considered the establishment of a single agency on which to focus responsibility for assuring the right to education of all handicapped children to be of paramount importance.'" Charlene R., 63 F. Supp.3d at 514 (quoting Kruelle v. New Castle Cnty. School Dist., 642 F.2d 687, 696 (3d Cir.1981)) (emphasis added). In Kruelle, the "Third Circuit very clearly stated that the SEA retains *primary responsibility* to ensure that all children with disabilities receive the education that is their right under the IDEA." Id. (emphasis added). See also Tammany Parish School Bd. of Louisiana, 142 F.3d 776, 784-85 (5th Cir. 1998) (both state and local school district could be found liable for failure to provide FAPE under IDEA, and district court acted within its discretion in ordering state board of

education to fund placement); Doe v. Maher, 793 F.2d 1470, 1492 (9th Cir. 1986) (state agency may be ordered to provide services directly to a disabled student); Vander Malle v. Ambach, 673 F.2d 49, 53 (2d Cir. 1982) (requiring state educational agency to fund student's private placement until alternative placement could be found; "a free appropriate public education at a suitable institution remains the responsibility of the State").

Pursuant to this analysis, the court in Charlene R. rejected PDE's argument that it was not responsible to comply with a settlement agreement, *which specifically provided for the payment of attorneys' fees*, reached between the parents of a disabled child and a public charter school that had ceased operations on the theory that the Department was "not a party to the agreement." Id. at 518. The court emphasized the issues presented by public charter schools which, unlike public school districts that encounter financial difficulties, "can simply disappear. This is a reality that the Court cannot ignore." Id. In that situation, the court concluded that the SEA must bear responsibility for providing the disabled child with a FAPE:

> The situation presented here is novel. Pennsylvania has *encouraged the growth of charter schools, which are considered to be public schools and LEAs under the IDEA*. I am faced with a charter school LEA which entered into a binding and enforceable resolution agreement to provide education which a child was entitled to receive but did not. Plaintiffs aver that they will prove the insolvency of the LEA. Accordingly, the issue before the Court is where the burden of insolvency falls: should

the child be left without recourse to recover the FAPE of which he was deprived, or should the SEA bear the responsibility of ensuring that he receives the education that is his right and that he is now owed? If discovery confirms that the LEA is, in fact, insolvent, and M.R. would be left without the compensatory education to which he is entitled, I conclude that the proper answer under the statute and case law would be to shift the responsibility for compliance to the SEA.

Id. at 519 (emphasis added).

The court concluded: "Although the SEA is permitted to delegate the actual provision of FAPEs to students, statutorily it remains at the top of the food chain. If this were not the case, then where a LEA could not provide a FAPE to a student, that student would have nowhere to turn to vindicate his or her right." Id. at 520. Thus, the Charlene R. court made clear that, where a public charter school ceases to function, the SEA bears the *primary* responsibility to provide the disabled child with a FAPE, including bearing responsibility to provide compensatory education and attorneys' fees pursuant to a settlement agreement.[3]

---

[3]    The Charlene R. court noted that the court was not considering the issue whether the parents were entitled to attorneys' fees as a prevailing party. 63 F. Supp.3d at 515 n.2. Notably, there was no *reason* for the court to decide that issue in that case because (a) the settlement agreement at issue specifically provided for the payment of attorneys' fees, id. at 512; and (b) the case was settled at an early stage, at a resolution session, id., so, unlike the present case, there was no due process hearing and no need for the court to decide whether the parents were a "prevailing party" in such a hearing as against PDE. Nevertheless, the court made clear that the settlement agreement, including the provision regarding the payment of attorneys' fees, could be enforced against PDE as the entity *primarily* responsible for providing the student with a FAPE.

16

Numerous courts have followed the reasoning in <u>Charlene R</u>. The court in

<u>R.V. v. Rivera</u>, 220 F. Supp.3d 588 (E.D. Pa. 2016), agreed with the "growing

consensus" of cases finding that an SEA is liable to provide FAPE to the student of

a failed charter school: "In light of the emerging consensus in this district that the

SEA assumes responsibility for a failed charter school's FAPE violations, a parent

may properly subject the SEA to an IDEA due process hearing on the allegations

made here.... Where, as here, there is no other educational agency to which a parent

may look to vindicate her child's rights to a FAPE because the LEA in which the

alleged violations occurred has since ceased to exist, the SEA's obligations as the

backstop to the state's IDEA obligations kick in." <u>Id.</u> at 594 (citing cases, footnote

omitted); <u>see also</u> <u>H.E. v. Walter D. Palmer Leadership Learning Partners Charter</u>

<u>School</u>, 220 F. Supp.3d 574, 586-87 (E.D. Pa. Oct. 27, 2016) (court rejected PDE's

argument that it was not responsible to provide a FAPE to a disabled student of a

defunct charter school; "where the LEA has ceased to exist, a parent may look to the

SEA to vindicate their child's right to FAPE"); <u>R.J. v. Rivera</u>, 2017 WL 3413005

(E.D. Pa. Aug. 9, 2017) (Judge Padova found: "Because the IDEA specifically allows

the parents of students who have been denied FAPEs to recover the costs associated

with obtaining that education, it would be contrary to the language of the statute and

congressional intent to deprive Plaintiffs of this compensation solely because they

17

were attending a state-encouraged charter school instead of a more traditional institution."). See also Johnson v. New Miami Local School District Board of Educ., 2016 WL 5122536 at *4 (S.D. Ohio Sept. 21, 2016) ("Courts have interpreted the language, structure and legislative history of the IDEA to permit a SEA to be held financially responsible when the LEA fails to provide FAPE to a child with a disability.") (citing, inter alia, Charlene R.).[4]

Pursuant to this reasoning, courts in this Circuit have found that an SEA such as PDE may be liable to pay attorneys' fees and costs to a Parent who has prevailed at a due process hearing involving a charter school that has become defunct and unable to fulfill its statutory obligations under IDEA. See R.J., 2017 WL 3413005 at *4 (in case where PDE was named as a party to due process proceedings, granting summary judgement to parents regarding entitlement to attorneys' fees, and finding that "PDE may be held responsible for Palmer Charter's failure to provide a FAPE

---

[4]    In addition, the United States Department of Education, Office of Special Education and Rehabilitative Services ("OSERS") has recently clarified in a "Dear Colleague" letter dated August 5, 2016 (originally attached as Exhibit 3 to Plaintiff's Memorandum of Law in support of their motion for summary judgment, and included in the Appendix at 153a-158a), that an SEA such as PDE "retains ultimate responsibility for ensuring that the requirements of Part B [of the IDEA] are met in all educational programs for children with disabilities administered within the state." (155a). Because IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B), is contained within Part B of IDEA, it is clear that PDE, as the SEA, has the "ultimate responsibility" to pay the Family's attorneys' fees and costs when the Charter School, due to its financial failure, cannot do so.

because it retains the 'ultimate responsibility" for ensuring that students receive a

FAPE and must step in to provide that education when the LEA is defunct"); H.E.,

220 F. Supp.3d at 586 n.13 (denying PDE's motion for summary judgment on claims

for attorneys' fees arising from failure of Palmer Charter School to comply with

settlement agreements due to Palmer's liquidation).[5]

### C.    Plaintiffs Are the Prevailing Parties, and Eligible for an Award of Reasonable Attorneys' Fees As Against PDE.

This Court in M.R. v. Ridley School Dist., 868 F.3d 218 (3d Cir. 2017),

recently set forth the standards for assessing whether a parent can be considered a

"prevailing party" for purposes of IDEA's fee-shifting provision:[6]

---

[5]    The court in H.E. eventually denied the plaintiffs' request for attorneys' fees not on the merits, but on the ground that her ruling was merely procedural and was interlocutory, as it "vacated the Hearing Officer's decisions [dismissing the due process matters for lack of jurisdiction] and remanded the cases for IDEA due process hearings." H.E. v. Walter D. Palmer Leadership Learning Partners Charter School, slip op. at 2 n.1 (E.D. Pa. Jan. 5, 2017). This decision denying an award of attorneys' fees was recently reversed by this Court. H.E. v. Walter D. Palmer Leadership Learning Partners Charter School, __ F.3d __, 2017 WL 4532207 (3d Cir. Oct. 11, 2017) (parent who vindicates a procedural right under IDEA that is not temporary forward-looking injunctive relief is a prevailing party and eligible for an award of attorneys' fees).

[6]    The relevant statute reads:

(B) Award of attorneys' fees

(i) In general

> [T]o "prevail" under the IDEA, as under other statutes with "prevailing party" fee provisions, a party must obtain a "material alteration of the legal relationship of the parties" that is "judicially sanctioned." .... Importantly, a party achieves a "material alteration" of the parties' legal relationship and "prevail[s]" for attorneys' fees purposes only if he obtains relief that is "in some way merit[s]-based."

Id. at 224.

Pursuant to this analysis, Plaintiffs are the "prevailing parties" as against PDE. Plaintiffs, as the District Court found (Memorandum at 9 (12a)) were "undoubtedly" the prevailing parties in the due process proceeding as against the Charter School, through obtaining a ruling on the merits of their claim – that the Charter School had deprived Santino of a FAPE by failing to reimburse Plaintiffs for the cost of the IEE. The Hearing Officer's decision also resulted in a change of relationship between Plaintiffs and PDE, because the Charter School's demise, as set forth in the numerous cases discussed above, resulted in PDE's becoming responsible to provide the *ordered* relief that the defunct Charter School could not, including the relief specifically provided for in IDEA of the availability of reasonable attorneys' fees to

---

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs–
>
> (I) to a prevailing party who is the parent of a child with a disability;
>
> ...

20 U.S.C. § 1415(i)(3)(B)(i)(I).

the Plaintiffs as prevailing parties.

The District Court, while acknowledging that Plaintiffs were the prevailing parties in the due process proceedings, nevertheless found that Plaintiffs are not the prevailing parties for purposes of obtaining an award of attorneys' fees against PDE under IDEA because Plaintiffs "did not ... prevail against the Department." (Id.). The District Court narrowly focused its analysis on a single fact – that PDE was not named as a party to the underlying due process proceedings. In the present case, PDE was necessarily not named as a party because, at the time that Plaintiffs filed their due process complaint against the Charter School, the Charter School still existed and was apparently able to provide any relief ordered by the Hearing Officer, and PDE would, at this time, have had no liability as the SEA. If the Charter School had ceased its operations prior to the due process proceedings, then Plaintiffs would have named PDE as a party, as the responsible SEA, as in R.J. v. Rivera, 2017 WL 3413005 (E.D. Pa. Aug. 9, 2017), and there would have been no conceivable question regarding PDE's responsibility to pay a reasonable fee award. Thus, the District Court's decision denying reasonable attorneys' fees to Plaintiffs depends wholly on a random and arbitrary happenstance – the specific date that the Charter School ceased to exist. According to the District Court's reasoning, parents of children who attend public charter schools may be eligible for an award of attorneys' fees as prevailing parties

if they are fortunate enough for the charter school to fail prior to a due process proceeding, such that the parents can name PDE as a party; but are ineligible for an award of fees if the charter school fails after a due process complaint is filed, even where PDE is ultimately liable as the SEA to provide the relief ordered by the Hearing Officer against the charter school. This is an entirely inappropriate basis upon which to deny prevailing party status to Plaintiffs, especially where PDE is *statutorily responsible* to provide the relief ordered by the Hearing Officer, and so should not be considered as a separate non-party to the proceedings.

In <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985), a case upon which the District Court specifically relied (Memorandum at 9 (12a)), the Supreme Court held that "it is clear that the logical place to look for recovery of fees is to the losing party – *the party legally responsible for relief on the merits*." <u>Id.</u> at 164 (emphasis added). In this matter, PDE *admits* that, as Santino's SEA, it has a clear and *admitted* obligation to fulfill the failed Charter School's educational obligations to Santino as ordered by the Hearing Officer, i.e., PDE is "the party legally responsible for relief on the merits." (Answer ¶¶ 4, 28 (35a, 38a). It should thus be utterly immaterial to Plaintiffs' status as prevailing parties whether the Charter School's failure took place at a time that allowed Plaintiffs to name PDE as a party to the due process complaint. The end result is the same – PDE is "legally responsible" for providing the relief

*ordered by the Hearing Officer* as against the Charter School, Graham, 473 U.S. at

164 – so there is no reasoned basis to deny an award of reasonable attorneys' fees to

Plaintiffs as the prevailing parties in the due process proceedings. See id. at 170 ("fee

and merits liability run together").

Significantly, the Kentucky v. Graham Court noted that, in a civil rights action

brought against a public official in his or her official capacity, "death or replacement

of the named official will result in automatic substitution of the official's successor

in office." Id. at 166 n.11. PDE, through operation of IDEA, is akin to such a public

official in that, as SEA, it automatically becomes responsible to fulfill the educational

obligations of a public charter school that ceases to exist. PDE, through operation

of IDEA's statutory requirements for SEAs, in conjunction with the Hearing Officer's

Decision, stepped into the shoes of the defunct Charter School for purposes of

complying with the "merits" of the Hearing Officer's Order. This clearly resulted in

a change in the "legal relationship" between Plaintiffs and PDE.

Public policy considerations also clearly favor finding that Plaintiffs are the

prevailing parties eligible to seek an award of attorneys' fees. While the Court in

M.R. found that the "child- and parent-friendly goals" of IDEA do not result in a

interpretation of a "prevailing party" under IDEA different than under other statutes,

the Court nevertheless found that, "in considering the statutory context, we must

consider the practical consequences of withholding attorneys' fees ... After all, courts are 'decidedly receptive' to remedies that are 'necessary or at least helpful to the accomplishment of the statutory purpose." M.R., 869 F.3d at 227 (citations omitted).

The "practical consequences" of not allowing Plaintiffs in matters such as the present to even be *eligible* for an award of attorneys' fees after having prevailed at a due process hearing would be that disabled students in charter schools have fundamentally fewer rights than disabled students attending public school districts, which is in direct contradiction to IDEA. See 34 C.F.R. § 300.209(c) (public charter schools that are LEAs are to be held to the same standards as other LEAs); Charlene R., 63 F. Supp.3d at 521. In the case of a student attending school in a public school district, there is virtually zero chance that the school district will simply disappear during or after a due process proceeding and therefore be unable to pay an award of attorneys' fees. However, as the Charlene R. court aptly found, charter schools in Pennsylvania can, and often do, "simply cease to exist." 63 F. Supp.3d at 520. In such a case, there is no reasoned basis why the students of a defunct charter school are, as the Charlene R. court held, entitled to a FAPE through PDE, but would not be entitled to an award of reasonable attorneys' fees in order to *vindicate and enforce their right to receive a FAPE* or other substantive protections under IDEA. The end result of not awarding attorneys' fees in this and similar cases is that the victory of

a family obtaining an award of compensatory education or, in this case, reimbursement for an IEE, may prove to be entirely pyrrhic, as the unreimbursed attorneys' fees and costs will in many cases be a significant proportion of, or even exceed, the substantive relief obtained.[7]  Moreover, such a result would clearly provide a disincentive for attorneys to represent students attending public charter schools (because they might never get paid for their work even if the student prevails at a due process hearing), and would thereby further place disabled students of charter

---

[7]      As numerous courts have recognized, in many civil rights cases the value of the relief obtained will, in fact, be less than the fees expended in obtaining that relief, and may, in fact, be "nominal."  In the present case, the relief obtained was not even arguably "nominal," as Plaintiffs obtained *all* the relief they sought in the due process proceeding.  Nevertheless, even obtaining "nominal" relief does not preclude an award of attorneys' fees to a prevailing party under federal civil rights statutes, *because to do so would undermine the public policy behind the respective statutes*: "[T]o preclude an award of attorney's fees in such cases would abrogate the Act's compensatory and deterrent purposes, as a plaintiff with only nominal damages would incur substantial but unrecoverable attorney's fees in vindicating his rights."  Bly v. Banbury Books, Inc., 638 F. Supp. 983, 988 (E.D. Pa. 1986).  See also Washington v. Philadelphia Court of Common Pleas, 89 F.3d 1031, 1042 n.8 (3d Cir. 1996) (in determining whether a plaintiff in a civil rights action is a prevailing party entitled to an award of attorneys' fees, proportionality between damages and attorneys' fees should not be considered because "success in civil rights litigation 'cannot be valued solely in monetary terms'") (citation omitted); Alexander v. Riga, 208 F.3d 419, 429 (3d Cir. 2000) (district court's refusal to properly instruct jury regarding availability of nominal damages in civil rights case, and refusing to find plaintiffs were the prevailing parties and entitled to award of attorneys' fees even where potential damages were merely nominal, was reversible error); Roccisano v. Township of Franklin, 2015 WL 3649149 at *19 (D.N.J. June 11, 2015) (a "court may not reduce a fee award based on a proportionality analysis between the damages awarded and the fees requested").

schools at a severe disadvantage compared to students attending traditional school districts.   Where Congress  in IDEA has made it plain that the availability of attorneys' fees to families who are prevailing parties is a crucial and necessary protection to help insure that the statutory rights of disabled students are vindicated (see discussion infra), and where Pennsylvania has "encouraged the growth of charter schools, which are to be considered to be public schools and LEAs under the IDEA[,]" Charlene R., 63 F. Supp.3d at 519, this Court should not accept the District Court's ruling that this protection is not available to disabled students who have the misfortune to attend a failed public charter school rather than a still-viable public school district.

> **D.    The District Court Committed a Clear Error of Law When It Found That the Availability of Statutory Attorneys' Fees Is not an Integral Component of IDEA's Remedial Statutory Scheme.**

The District Court, in concluding that Plaintiffs are ineligible as a matter of law from even *seeking* an award of attorney's fees under IDEA, found that the availability of fees to prevailing parties is not an "integral" component of IDEA, i.e., that the proposition that "IDEA's fee shifting provisions provide families with access to effective counsel" is, as "a legal matter, ... unsupported." (Memorandum at 11 (14a)). The lower court's conclusion, and reasoning, is entirely at odds with Congress's

intent in promulgating not only IDEA's fee-shifting provision, but *all* such provisions providing for awards of attorneys' fees to prevailing parties in federal civil rights actions. Congress has clearly stated, and courts have recognized, that such fee-shifting provisions, including IDEA's, are essential, important, and integral components of the underlying statutory scheme.

The District Court offers a *single* basis for its pronouncement that fee shifting is not an integral part of IDEA's statutory scheme: that the wording of IDEA's fee-shifting provision, which provides that a court "in its discretion, may award reasonable attorneys' fees[,]" 20 U.S.C. § 1415(i)(3)(B), renders an award of fees to a prevailing parent "discretionary." Based *solely* on this "discretionary" statutory wording, the District Court found that the availability of an award of attorneys' fees to a prevailing parent is not integral to IDEA's rehabilitative scheme or purpose: "That IDEA's fee shifting is discretionary indicates that Congress did not believe fee shifting was integral to the law's guarantee of a free appropriate public education." (Memorandum at 13 (16a)).

This reasoning, and conclusion, is utterly incorrect. Courts, including this Court, have clearly recognized that the availability of an award of attorneys' fees to parents who prevail in IDEA proceedings is an integral, necessary, and vital component of IDEA's remedial scheme. Moreover, courts, in direct contradiction to

27

the reasoning of the District Court, have *universally* held that an award of attorneys'

fees under IDEA and similar statutes that provide that a court "may" award attorneys'

fees to prevailing parties is not, in fact, discretionary, and that courts *must* award

attorneys' fees to a prevailing party except in clear, "tightly cabined," circumstances.

New Jersey Coalition of Rooming and Boarding House Owners v. Mayor and Council

of the City of Asbury Park, 152 F.3d 217, 225 (3d Cir. 1998) (citing cases). Inherent

in these decisions is the recognition that fee shifting is a *vital and necessary* aspect

of civil rights enforcement schemes, including IDEA, in order to encourage and allow

representation by experienced counsel in civil rights matters. The District Court's

conclusion to the contrary is utterly without basis, and is clear error.

This Court in M.R. v. Ridley School District, 868 F.3d 218 (3d Cir. 2017),

recently, with reference to the specific wording of IDEA and its legislative history,

noted the vital importance of fee-shifting to IDEA's overall statutory scheme:

> [With regard to IDEA], Congress expressly found that "[i]mproving
> educational results for children with disabilities is an essential element
> of our national policy of ensuring equality of opportunity ... for
> individuals with disabilities," 20 U.S.C. § 1400(c)(1), and thus the
> statute seeks to make "the education of children with disabilities ...
> more effective," to "ensure that all children with disabilities have
> available to them a free appropriate public education ... designed to meet
> their unique needs," and to "ensure that the rights of children with
> disabilities and parents of such children are protected," id. § 1400(c)(5),
> (d)(1)(A), (d)(1)(B). Along these lines, *the IDEA's legislative history
> reflects that Congress enacted the attorneys' fees provision specifically*

*to ensure "that due process procedures, including the right to litigation if that [becomes] necessary, [are] available to all parents." S. Rep. No. 99-112, at 2 (1985).*

Id. at 227 (emphasis added).  This is a clear statement of the "integral" nature of IDEA's fee-shifting provision.

Other courts have specifically recognized the vital and essential nature of fee shifting under IDEA.  See, e.g., Briggs v. District of Columbia, 102 F. Supp.3d 164, 169 (D.D.C. 2015) (recognizing the "important societal interest advanced by the IDEA's fee-shifting provision"); Garvin v. District of Columbia, 910 F. Supp.2d 135, 138 (D.D.C. 2012) (if courts did not allow prevailing parties to seek attorneys' fees for additional fees expended in filing fee petition, i.e., "fees-on-fees," this would "undoubtedly undermine the impact of a fee-shifting provision, *thereby diminishing the effectiveness of the statute [i.e., IDEA] that the provision is designed to enforce*") (emphasis added); Jones v. District of Columbia, 153 F. Supp.3d 114, 118 (D.D.C. 2015) (availability of "fees-on-fees" is "essential" and "necessary" to fulfill purposes of underlying civil rights statutes, including IDEA).[8]

---

[8]    A case upon which the Jones court relied, American Fed. of Gov't Employees, AFL-CIO, Local 3382 v. Federal Labor Relations Auth., 994 F.2d 20 (D.D.C. 1993), in holding that plaintiffs may recover "fees on fees," noted the important, and multiple, public policy considerations underlying the availability of fee shifting under federal civil rights statutes:

[Fees on fees requests] are often necessary to fulfill the purposes of the statutory scheme on which the action is based. Attorney's fee provisions

The court in <u>Kelsey v. District of Columbia</u>, 219 F. Supp.3d 197 (D.D.C. 2016) specifically found that, without the availability of fee shifting under IDEA, a "litigant would not be made 'whole when she is wronged under a statute,' even if she succeeds on the merits of her claim, and potential litigants might be discouraged from bringing their claims because of the 'costs of pursuing such suit.'" <u>Id.</u> at 203 (citation omitted). This is a judicial recognition that, without the ability to obtain reimbursement of fees, a family who prevails on a claim under IDEA is not truly "made whole" if the family does not have the ability to receive an award of reasonable attorneys' fees. This is particularly so where, as previously discussed *supra* at 25 n.7, attorneys' fees in IDEA and other civil rights litigation often exceed, and sometimes far exceed, the monetary value of the relief obtained.

In <u>Curtis K. v. Sioux Comm. School Dist.</u>, 895 F. Supp. 1197, 1200 (N.D. Iowa

---

in federal statutes have *various and multiple objectives, all of them related to furthering the goals of the underlying statutes.* Sometimes they are intended to make a litigant whole when she is wronged under a statute. At other times, their purpose is to encourage suits challenging conduct disfavored by a statute by reducing the costs of pursuing such suits. In still other instances, fee-shifting provisions are intended primarily to make it possible for an indigent litigant to hire an attorney to enforce her rights under a statute. No matter what the purpose of an attorney's fee provision, however, the availability of "fees for fees" is *essential* to carrying out Congress' goal in including the provision in the first place.

<u>Id.</u> at 22 (emphasis added).

1995), the Court noted that the legislative history of IDEA reveals the vital importance of the availability of fee awards to the functioning of IDEA's remedial scheme. The court noted that a prior decision of the Supreme Court, Smith v. Robinson, 468 U.S. 992 (1984), held that, without specific statutory language, attorneys' fees were not available to prevailing parents under IDEA's predecessor statute, the Education of the Handicapped Act ("EHA"). In response to that decision, Congress moved "'swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent.'" Curtis K., 895 F. Supp. at 1206-07 (quoting Fountenot v. Louisiana Bd. of Elementary and Secondary Educ., 805 F.2d 1222, 1223 (5th Cir. 1986)). The court further stated:

> The legislative history reveals Congress's reasons for adding the fee-claim provisions to the IDEA. Senator Weicker, chairman of the Senate Conference Committee on the HCPA, which incorporated the provision into the act, then known as the EHA, said
>
>> What we do here today is to make the Education of Handicapped Act consistent with more than 130 other fee shifting statutes which provide for the award of attorney's fees to parties who prevail in court to obtain what is guaranteed to them by law. *Without this remedy, many of our civil rights would be hollow pronouncements available only to those who could afford to sue for enforcement of their rights.*"
>
> 132 Cong.Rec.S. 9277 (July 17, 1986) (remarks of Sen. Weicker) (emphasis added).

Curtis K., 895 F. Supp. at 1207. Thus, Congress specifically saw the availability of

attorneys' fees under IDEA as so vital and integral to that statute that it very quickly passed a law, the Handicapped Children's Protection Act, *specifically to overrule a Supreme Court case* that held that attorneys' fees were not available to prevailing parties under the language of IDEA's predecessor statute. Congress, in enacting this law, clearly recognized that, without the availability of attorneys' fees under IDEA, the rights set forth in IDEA would be mere "hollow pronouncements," incapable of effective enforcement.

The District Court, without reference to such authority, noted that IDEA's fee-shifting provision appears, on its face, to grant district courts "discretion" as to whether to award attorneys' fees. *With no further analysis*, the District Court concluded *from this wording alone* that fee-shifting under IDEA is not an "integral" part of IDEA's enforcement mechanism because it was not "mandated" by Congress. (Memorandum at 12-13 (16a-17a)). However, this "discretionary" reasoning has been soundly, and universally, rejected by numerous courts, including the Supreme Court of the United States. The Supreme Court in Hensley v. Eckerhart, 461 U.S. 424 (1983), in interpreting the fee-shifting provisions of 42 U.S.C. § 1988, clearly held that a prevailing party under federal civil rights statutes should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Id. at 429. Notably, Section 1988, *exactly* like IDEA's fee-shifting provision,

provides that a court "in its discretion, may allow... a reasonable attorney's fee as part

of the costs...."[9]   Yet, the <u>Hensley</u> Court made absolutely clear that a court may

exercise its apparent "discretion" to entirely deny reasonable fees to a prevailing party

---

[9]    Section 1988(b) provides:

(b) Attorneys fees

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318..., the Religious Freedom Restoration Act of 1993..., the Religious Land Use and Institutionalized Persons Act of 2000..., title VI of the Civil Rights Act of 1964..., or section 13981 of this title, ***the court, in its discretion, may allow the prevailing party***, other than the United States, ***a reasonable attorney's fee as part of the costs***, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

(Emphasis added, citations omitted).

This Court in <u>M.R.</u> recently noted that "we interpret the language of § 1988 and the IDEA attorneys' fees provision in 'the same way'... and are bound by our cases addressing § 1988...." 868 F.3d at 225 (quoting <u>In re: Cmty. Bank</u>, 418 F.3d 277, 295-96 (3d Cir. 1005)).  Other courts have also held that the standards for awarding attorneys' fees under Section 1988 and similar civil rights statutes are identical to those applicable to awarding fees under IDEA, which uses nearly identical statutory language.  <u>See Curtis K.</u>, 895 F. Supp. at 1218 (court recognized that it "was Congress's intent that 'prevailing party' under the IDEA be interpreted in a manner 'consistent with the United States Supreme Court's decision in *Hensley v. Eckerhart*[.]") (citation omitted).  <u>See also Gibson v. City of Chicago</u>, 873 F. Supp.2d 975, 981 n.1 (N.D. Ill. 2012) (citing <u>Pickett v. Sheridan Health Care Ctr.</u>, 664 F.3d 632, 639 n.1 (7th Cir. 2011); <u>Jodlowski v. Valley View Comm. Unit School Dist. No. 365-U</u>, 109 F.3d 1250, 1253 n.2 (7th Cir. 1997)).

in only very limited circumstances:

> ***The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances.*** H.R.Rep. No. 94–1558, p. 1 (1976). ***Accordingly, a prevailing plaintiff "'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"*** S.Rep. No. 94–1011, p. 4 (1976), U.S.Code Cong. & Admin.News 1976, p. 5912 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

Hensley, 461 U.S. at 429 (emphasis added).  As set forth by the Supreme Court, this "special circumstances" standard, which is applicable despite the "discretion" language in the statute, is intended to implement Congress's clear purpose in ensuring access to the judicial system to civil rights plaintiffs through the availability of fee-shifting to prevailing parties except in very limited circumstances.

The Senate legislative report that the Hensley Court cited makes clear that Congress viewed the availability of prevailing party fees as absolutely vital and integral to the effective operation of civil rights statutes.  For instance, S. Rep. No. 94–1011 (1976), U.S. Code Cong. & Admin. News 1976, at 5908, states clearly that "[a]ll of these civil rights laws depend heavily upon private enforcement, and *fee awards have proved an **essential remedy** if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain*.  Id. at 5910 (emphasis added).  The report further noted: "The remedy of attorneys' fees has always been recognized as particularly appropriate in the civil

34

rights area, and *civil rights and attorneys' fees have always been closely interwoven*.

In the civil rights area, Congress has instructed the courts to use the broadest and

most effective remedies available to achieve the goals of our civil rights laws." <u>Id.</u>

at 5910-11 (emphasis added).  The senate report specifically found that the

availability of attorneys' fees is an "integral" part of federal civil rights schemes:

"[F]ee awards are an ***integral part*** of the remedies necessary to obtain ... compliance"

with federal civil rights statutes.  <u>Id.</u> at 5913 (emphasis added).  The report

concluded: "Enforcement of the [civil rights] laws depends on governmental action

and, in some cases, on private action through the courts. If the cost of private

enforcement actions becomes too great, there will be no private enforcement. *If our*

*civil rights laws are not to become mere hollow pronouncements which the average*

*citizen cannot enforce, we must maintain the traditionally effective remedy of fee*

*shifting in these cases*." <u>Id.</u> at 5913 (emphasis added). Thus, the Senate report upon

which the <u>Hensley</u> Court relied is absolutely clear that Congress viewed the

availability of fee-shifting under federal civil rights laws to be "essential" and

"integral" to their effective functioning; that civil rights laws become "mere hollow

pronouncements" without the availability of fee-shifting; and that, indeed, the

substantive rights guaranteed by civil rights statutes, and the availability of attorneys'

fees to vindicate those rights, are "closely interwoven."

*Numerous* decisions, following <u>Hensley</u>, have found that courts in fact have very limited discretion, including in IDEA matters, to entirely deny attorneys' fees to a prevailing party in a civil rights case where federal fee shifting is available.  <u>See Kay v. Ehrler</u>, 499 U.S. 432, 436 & 436 n.8 (1991) (specific purpose of Section 1988 "was to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights"; "In their hearings, both Senate and House Subcommittees focused on the need of average citizens to be able to afford lawyers so that they could protect their rights in court."); <u>New Jersey Coalition of Rooming and Boarding House Owners v. Mayor and Council of the City of Asbury Park</u>, 152 F.3d 217, 225 (3d Cir. 1998) (citing cases); <u>Ward v. Philadelphia Parking Auth.</u>, 2015 WL 263733 at**2, 7 (E.D. Pa. Jan. 21, 2015); <u>Bochart v. Wayne</u>, 2017 WL 1536399 at *1 (D. Mass. April 27, 2017) ("Although the fee-shifting provision of § 1988 'is couched in permissive terminology, awards in favor of prevailing civil rights plaintiffs are virtually obligatory.'") (quoting <u>Diaz-Rivera v. Rivera-Rodriguez</u>, 377 F.3d 119, 124 (1st Cir. 2004)); <u>Jones v. District of Columbia</u>, 153 F. Supp.3d 114, 119 (D.D.C. 2015) (prevailing parties in IDEA matters should ordinarily recover attorneys' fees absent special circumstances that would render an award unjust); <u>EEOC v. Freeman</u>, 126 F. Supp.3d 560, 568 (D. Md. 2015) (under Title VII, the "prevailing plaintiff is acting as a 'private attorney general' in vindicating an important federal interest

against a violator of federal law, and therefore 'ordinarily is to be awarded attorney's fees in all but special circumstances'") (citation omitted).

The clear basis for such decisions is the <u>Hensley</u> Court's recognition that the availability of fee awards is "'essential'" to the functioning of civil rights statutes. See <u>Disabled Patriots of America, Inc.</u>, 659 F. Supp.2d 877, 895 n.10 (N.D. Ohio 2009) (quoting S. Rep. 94–1011, U.S. Code Cong. & Admin. News 1976, at 5910). See also <u>Flaum v. Gloucester Lanes, Inc.</u>, 2015 WL 364603 at *2 (E.D. Va. Jan. 27, 2015) ("Attorney's fees provisions are an important mechanism for parties to vindicate the violation of their civil rights, and thus are remedial in nature."); <u>Faulk v. Duplantis</u>, 2015 WL 3539637 at *3 (E.D. La. June 4, 2015) (aim of availability of attorneys' fees under Section 1988 "is to serve the important public purpose of encouraging capable attorneys to undertake the representation of meritorious civil rights cases-cases that might otherwise be overlooked because at times the vindication of rights does not involve a significant monetary value"); <u>Martin v. Hancock</u>, 466 F. Supp. 454, 455-56 (D. Minn. 1979) (without fee-shifting provisions of Section 1988, "Congress was fearful that those important [civil rights] acts would become dead letters").

In <u>Rooming and Boarding House Owners</u>, this Court noted that while the applicable language in the federal fair housing statute – "the court, in its discretion,

37

may allow the prevailing party ... a reasonable attorney's fee and costs" – "sounds fully discretionary[,]" it "actually is not." 152 F.3d 217 at 225. "In fact, a district court's discretion not to grant attorney's fees and costs in civil rights cases is tightly cabined." Id. (citing cases). Thus, this Court has clearly recognized that federal courts have, in fact, little discretion to deny attorneys' fees to prevailing parties in civil rights actions, which is directly contrary to the District Court's statement that the availability of attorneys' fees in IDEA actions is entirely "discretionary." This fact entirely undermines the District Court's otherwise unsupported conclusion that this supposed complete – but, in fact, highly limited – "discretion" somehow demonstrates that Congress did not view the availability of attorneys' fees in IDEA actions as integral, vital and necessary to the functioning of IDEA's remedial statutory scheme.[10]

Thus, the District Court's conclusion that fee-shifting is discretionary and therefore not an "integral" component of IDEA's statutory scheme, including its requirement that disabled students be provided a FAPE, is entirely contradicted by relevant authority. All of the above-cited authority recognizes that the availability of

---

[10]     The District Court cited several federal statutes that the court stated "mandated" that attorneys' fees be awarded to a prevailing party (Memorandum at 13 (15a)), in contrast to IDEA's "discretion" language. Notably, however, the Court cites no authority holding that the "mandatory" wording of such statutes makes the standard for awarding attorneys' fees under those statutes any more mandatory than under IDEA, or that the awarding of fees under such statutes is any more integral to those statutes than under IDEA.

fee-shifting is essential to the protection of the *substantive* rights protected by federal civil rights statutes, including the right to a FAPE guaranteed by IDEA.   In the present case, Plaintiffs' representation by counsel was essential and integral to Plaintiffs' obtaining relief at the due process hearing.[11]  The court's statement that Plaintiffs failed to support their argument with relevant authority is simply incorrect. Plaintiffs cited P.D. v. Mt. Vernon Comm. School Corp., 2008 WL 1701877 (S.D. Ind. April 10, 2008),[12] which discussed the policy considerations behind federal fee

---

[11]     The District Court sets forth the theoretical availability of alternative methods (a state complaint procedure, where PDE is both investigator and decision maker; and mediation) of obtaining a FAPE other than pursuing IDEA's due process procedures.  (Decision at 3-4 (6a-7a)).  The lower court does not discuss the significance of these alternative procedures, but the clear implication is that families of disabled children deprived of a FAPE can use such procedures to vindicate their statutory rights without the necessity of legal counsel.  This is entirely irrelevant to this matter, however; whether Plaintiffs theoretically *might* have obtained substantive relief for the Charter School's failure to provide a FAPE through these alternative procedures is of absolutely no moment when Plaintiffs *did* use the due process procedure, as it was their right under IDEA to do, and were, in fact, represented by counsel in that proceeding (as was the Charter School), and incurred attorneys' fees in connection therewith.  The outcome of this case cannot depend on rewriting history to imagine a scenario where Plaintiffs *might* have obtained the substantive relief they sought through means other than filing a due process complaint under IDEA and did not incur attorneys' fees in doing so.  Moreover, families of disabled children enrolled in public charter schools should not have to forego their statutory right to pursue a due process hearing under IDEA, and instead pursue these purported alternative procedures without counsel, because of a fear that they will not be able to recover attorneys' fees as a prevailing party in the event the charter school fails.

[12]     The District Court inaccurately and unfortunately stated that Plaintiffs quoted or cited the plaintiff's position in P.D. "as if it were the court's holding."

shifting in an IDEA context; and <u>McCampbell v. Chrysler Corp.</u>, 425 F. Supp. 1326, 1327 (E.D. Mich. 1977), and <u>Dorr v. Weber</u>, 741 F. Supp.2d 1022, 1027 (N.D. Iowa 2010), which discussed the important policy considerations behind federal fee shifting in the context of other civil rights statutes.  Plaintiffs' position was *clearly* supported with relevant authority; the District Court, conversely, set forth *no* support for its holding that the availability of counsel fees is *not* an integral component of IDEA other than to cite – with *no* legal analysis or supporting judicial authority – other federal statutes that the court inaccurately viewed as granting less discretion to deny fee requests than IDEA.

The District Court's reasoning is founded on an incorrect legal premise – that fee-shifting under IDEA is wholly discretionary with the court; and on faulty logic – that the supposed "discretionary" nature of fee shifting under IDEA somehow, in itself, demonstrates that Congress did not view fee shifting as essential or integral to the functioning of IDEA's remedial scheme.  The court erred on both counts.  Under clearly-established authority, the availability of an award of reasonable attorneys' fees

---

(Memorandum at 12 (16a)).  In fact, Plaintiffs introduced a quote from <u>P.D.</u> by stating that "the court *noted* the policy considerations behind IDEA's fee-shifting provision *as urged by the plaintiffs*:" (Pl. Memo. of Law at 13) (emphasis added). Plaintiffs thus made very clear that the court was merely "not[ing]" a policy consideration that the plaintiffs had "urged" (and the <u>P.D.</u> court did not dispute existed), and then directly quoted the court's discussion of the competing policy considerations at issue.

is an essential, integral component of numerous federal civil rights statutes, including IDEA. The essential, integral nature of fee shifting under IDEA renders it a vitally important element of relief in a due process hearing. Therefore, PDE, as Santino's SEA, is as responsible for providing that vital relief as it is for providing the reimbursement for Dr. Schmidt's IEE.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants respectfully request that the District Court's order be reversed.

Respectfully submitted,

Dennis C. McAndrews, Esquire

Michael E. Gehring, Esquire

Michael J. Connolly, Esquire

McANDREWS LAW OFFICES
30 Cassatt Avenue
Berwyn, PA
(610) 648-9300 (phone)
(610) 648-0433 (fax)

Attorneys for Plaintiffs-Appellants

41

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

APPELLATE DOCKET NO. 17-2461

SANTINO P. v. PENNSYLVANIA DEPARTMENT OF EDUCATION

### COMBINED CERTIFICATIONS

I, Michael E. Gehring, Esquire, hereby certify as follows:

1.     I am a member of the Bar of the United States Court of Appeals for the Third Circuit, as is my co-counsel, Dennis C. McAndrews, Esquire, and Michael J. Connolly, Esquire.

2.     The foregoing brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,598 words. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Wordperfect X6 in 14 point Times New Roman typeface.

3.     The foregoing Brief and Appendix Volume I (Pages 1a-17a) was served upon the following person in the manner indicated below, which service satisfies the requirements of the Federal Rules of Appellate Procedure:

SERVICE VIA ELECTRONIC FILING:

Claudia M. Tesoro
Senior Deputy Attorney General
Appellate Litigation Section
21 South 12th Street, 3rd Floor
Philadelphia, PA  19107

Ms. Tesoro is an Electronic Filing User as provided in L.A.R. Misc. 113.4:

    4.    The electronically filed copy of this Brief and Appendix Volume I is identical to the hard copies delivered to the Court by United States Mail within five calendar days of the date of electronic filing of this Brief and Appendix Volume I (October 24, 2017).  All hard copies of the foregoing Brief and Appendix Volume I are identically compliant according to the rules set forth by this Court.

    5.    The electronically filed copy of this Brief and Appendix Volume I in PDF format was virus-checked using Malwarebytes Anti-Malware.

Michael E. Gehring, Esquire

DATED: October 24, 2017

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANTINO P., by and through his Parent, JOSEPH P., | : | Civil Action |
| | : | |
| Plaintiffs | : | |
| v. | : | No. 16-05230 |
| | : | |
| PENNSYLVANIA DEPARTMENT OF EDUCATION | : | The Honorable Gerald J. Pappert |
| | : | |
| Defendant | : | |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff Santino P., by and through his Parent, Joseph P. ("Plaintiffs"), hereby appeal to the United States Court of Appeals for the Third Circuit from the Memorandum (ECF No. 24) and Order (ECF No. 25), dated June 15, 2017, by the Honorable Gerald J. Pappert, which: (a) granted Defendant's Motion for Summary Judgment (ECF No. 16); and (b) denied Plaintiffs' Motion for Summary Judgment (ECF No. 15).

Respectfully submitted,

Dennis C. McAndrews, Esquire
ID No. 28012
Michael E. Gehring, Esquire
ID No. 57224
Michael J. Connolly, Esquire
ID No. 82065

McANDREWS LAW OFFICES
Attorneys for Plaintiffs
30 Cassatt Avenue
Berwyn, PA
(610) 648-9300 (phone)
(610) 648-0433 (fax)
Attorneys for Plaintiffs/Appellants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Appeal was served upon following person in the manner indicated below, which service satisfies the requirements of the Federal of Civil Procedure:

### VIA FIRST CLASS MAIL

Kevin Bradford, Esquire
Senior Deputy Attorney General
Office of Attorney General
Commonwealth of Pennsylvania
21 S. 12th Street
3rd Floor
Philadelphia, PA 19107

M. Patricia Fullerton, Assistant Chief Counsel
Roberto T. Datorre, Deputy Chief Counse
Elizabeth Anzalone, Assistant Counsel
Pennsylvania Department of Education
Office of Chief Counsel
333 Market Street
9th Floor
Harrisburg, PA 17126-0333

Michael E. Gehring, Esquire

DATED:        July 6, 2017

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SANTINO P., by and through his Parent,
JOSEPH P.,

        *Plaintiff,*

    v.

PENNSYLVANIA DEPARTMENT OF
EDUCATION,

        *Defendant.*

CIVIL ACTION
NO. 16-5230

## ORDER

AND NOW, this 15th day of June, 2017, after consideration of the parties' cross-motions for summary judgment, (ECF Nos. 15 & 16), and the responses thereto, (ECF Nos. 19 & 20), it is hereby ordered that Plaintiff's motion, (ECF No. 15), is **DENIED** and Defendant's motion, (ECF No. 16), is **GRANTED**. Plaintiffs' claim is **DISMISSED** with prejudice. The case shall be **CLOSED** for statistical purposes.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

3a

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SANTINO P., by and through his Parent,
JOSEPH P.,

    *Plaintiff,*           CIVIL ACTION
                  No. 16-5230

  v.

PENNSYLVANIA DEPARTMENT OF
EDUCATION,

    *Defendant.*

PAPPERT, J.                 June 15, 2017

## MEMORANDUM

  This case requires the Court to decide whether a parent who prevailed in a due process hearing against a public charter school can recover attorneys' fees from the Pennsylvania Department of Education when the Department was not a party to that hearing and separately satisfied its obligations under the Individuals with Disabilities Education Act ("IDEA"). The parties stipulated to all facts and filed cross motions for summary judgment. The Court grants the Department's motion for two related reasons: The Plaintiff did not prevail against the Department at the due process hearing and Congress declined to make fee shifting integral to a free appropriate public education under IDEA.

I.

A.

  IDEA requires states receiving federal funding to make a "free appropriate public education available to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A); *see also Endrew F. ex rel. Joseph F. v. Douglas Sch. Dist.*, 137 S. Ct. 988, 993 (2017);

1

4a

*D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 556 (3d Cir. 2010). A free appropriate public education "includes both 'special education' and 'related services.'" *Endrew F.*, 137 S. Ct. at 994 (citing 20 U.S.C. §§ 1401(26), (29)). IDEA mandates instruction that is "specially . . . designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *D.S.*, 602 F.3d at 556 (quotation and citation omitted); *see also* 20 U.S.C. § 1401(9). Under IDEA, states "must confer an education providing 'significant learning' and 'meaningful benefit' to the child." *Id.* (quoting *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999)). IDEA thus "ensures that students with special education needs receive the type of education that will 'prepare them for further education, employment, and independent living.'" *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717 (3d Cir. 2010) (quoting 20 U.S.C. § 1400(d)(1)(A)).

States seeking funding under IDEA must submit a plan of compliance to the Secretary of Education. 20 U.S.C. §§ 1412–14. IDEA then gives the State Education Agency ("SEA")—*i.e.*, the state department of education, *id.* § 1401(32)—the responsibility of apportioning the funds to Local Education Agencies ("LEAs")—*i.e.* school districts or public charter schools, *id.* § 1401(19)(A). *See id.* § 1413(a). "The SEA is responsible for ensuring that LEAs comply with the mandates of the IDEA in providing educational services to those eligible students." *Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 513 (E.D. Pa. 2014) (citing 20 U.S.C. § 1412(a)(11)(A)). The LEA is the entity that actually provides services to children under IDEA. *Id.*; *see also* 20 U.S.C. § 1414(d)(1)(A). It is the SEA, however, that "retains primary responsibility to ensure that all children with disabilities receive the

education that is their right under the IDEA." *Charlene R.*, 63 F. Supp. at 513; *see* 20

U.S.C. §§ 1412(a)(11)(A), 1413(g)(1); *Kruelle v. New Castle Cty. Sch. Dist.*, 642 F.2d 687,

696 (3d Cir. 1981); *see also Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006); *St.

Tammany Parish Sch. Bd. v. State of Louisiana*, 142 F.3d 776, 784 (5th Cir. 1998);

*Gadsby v. Grasmick*, 109 F.3d 940, 943 (4th Cir. 1997).

### B.

IDEA requires states to establish extensive safeguards to ensure all disabled

children receive a free appropriate public education. *See* 20 U.S.C. § 1415(a). Three

primary mechanisms exist to settle such disputes: a due process hearing, a state

complaint and formal mediation.

A due process hearing provides an "opportunity for any party to present a

complaint . . . with respect to any matter relating to the identification, evaluation, or

educational placement of the child, or the provision of a free appropriate public

education to such child." *Id.* § 1415(b)(6)(A). "In Pennsylvania, the Commonwealth's

Office of Dispute Resolution ("ODR") is responsible for conducting IDEA due process

hearings." *H.E. v. Palmer*, 220 F. Supp. 3d 574, 577 (E.D. Pa. 2016) (citing 22 Pa. Code

§ 14.162). Any party "aggrieved by" the hearing officer's "findings and decision" may

seek review of the decision by filing a civil action in state court or in a district court of

the United States. 20 U.S.C. § 1415(i)(2)(A).

Alternatively, parents may file a complaint directly with the SEA. "Upon receipt

of such a complaint, the SEA must evaluate the complaint and carry out, as necessary,

an independent investigation before reaching a final decision containing findings of fact

and conclusions." *R.V. v. Rivera*, 220 F. Supp. 3d 588, 591 (E.D. Pa. 2016) (citing 34

C.F.R. §§ 300.151–.153)). The due process hearing and state complaint process are parallel proceedings, "either of which a parent may opt to pursue in the first instance," however, "the due process complaint procedure takes priority over the state complaint procedure." *Id.* (citing 34 C.F.R. § 300.152(c)(1) (explaining that an SEA must stay its investigation when a due process complaint is filed)).

Finally, IDEA provides for formal mediation. States must "ensure that procedures are established and implemented to allow parties . . . to resolve such disputes through a mediation process." 20 U.S.C. § 1415(e)(1). This process must be voluntary, cannot be "used to deny or delay a parent's right to a due process hearing . . . or to deny any other rights" and must be "conducted by a qualified and impartial mediator who is trained in effective mediation techniques." *Id.* § 1415(e)(2)(A).

C.

Separate from the procedural protections described above, IDEA allows prevailing parties the opportunity to recover attorneys' fees. *See id.* § 1415(i)(3). That provision provides that in "any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."[1]

Notably, § 1415(i)(2), which provides for court review of a hearing officer's decision, and § 1415(i)(3), providing for fee shifting, "contain separate jurisdictional grants, and the weight of authority holds that they create two distinct causes of action." *D.G. v. New Caney Indep. Sch. Dist.*, 806 F.3d 310, 317 (5th Cir. 2015); *see Zipperer v.*

---

[1]    IDEA also provides for fee shifting to SEAs or LEAs who prevail when the opposing party filed a complaint or subsequent cause of action that was "frivolous, unreasonable, or without foundation" or if the complaint or subsequent cause of action was "presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i)(II)–(III).

*Sch. Bd.*, 111 F.3d 847, 851 (11th Cir. 1997); *Moore v. District of Columbia*, 907 F.2d

165, 171 (D.C. Cir. 1990); *see also B.K. Toms River Bd. of Educ.*, 998 F. Supp. 462, 471

(D.N.J. 1998) (citing with approval *Zipperer*, 111 F.3d at 851). *But see King v. Floyd*

*Cty. Bd. of Educ.*, 228 F.3d 622, 626 n.4 (6th Cir. 2000)

Under § 1415(i)(2), parties "aggrieved by the findings and decision made" by the

hearing officer may bring a civil action within "90 days from the date of the decision of

the hearing officer." 20 U.S.C. § 1415(i)(2)(B). In contrast, "prevailing parties" may

bring a civil action under § 1415(i)(3) to recover reasonable attorneys' fees. *Id.*

§ 1415(i)(3)(B). Courts, recognizing these two distinct causes of action, have also held

that a different statute of limitation applies to actions brought under § 1415(i)(3).[2] *See,*

*e.g., D.G.*, 806 F.3d at 317; *Zipperer*, 111 F.3d at 851.

## II.

The facts of this case are unique. Santino is a student eligible for special

education services under IDEA. (Stipulated Facts ¶ 5, ECF No. 17.) In October 2013,

Santino enrolled in the eighth grade at the Walter D. Palmer Leadership and Learning

Charter School, an LEA that received federal financial assistance under IDEA. (*Id.*

---

[2]      The Department did not raise a statute of limitations argument in its motion for summary
judgment. At oral argument, the Department tacitly conceded that the ninety-day limitations period
of 20 U.S.C. § 1415(i)(2)(B) does not apply to actions brought under 20 U.S.C. § 1415(i)(3) and
explained that it did not brief the statute of limitations issue because the law was not clear. (Tr. of
Hr'g, at 13:1–6). The Court agrees that the ninety-day limitations period does not apply here. The
Third Circuit has not decided this issue, but a circuit split has developed over whether IDEA fee
shifting should have a long or short statute of limitations. *Compare Meridian Joint Sch. Dist.*, 792
F.3d 1054, 1064 n.9 (9th Cir. 2015) (finding three year statute of limitations likely applied to
attorneys' fee claims under IDEA); *Zipperer v. Sch. Bd.*, 111 F.3d 847, 851 (11th Cir. 1997) (adopting
a four year statute of limitations applied to attorneys' fee claims under IDEA) *with King v. Floyd*
*Cty. Bd. of Educ.*, 228 F.3d 622, 626 n.4 (6th Cir. 2000) (holding that a thirty day statute of
limitations applied to attorneys' fee claims under IDEA); *Powers v. Ind. Dep't of Educ.*, 61 F.3d 552,
556 (7th Cir. 1995) (same). Two district courts in this circuit have concluded that the limitations
period is at least two years. *See Murphy v. Girard Sch. Dist.*, 134 F. Supp. 2d 431, 436 (W.D. Pa.
1999); *B.K. v. Toms River Bd. of Educ.*, 998 F. Supp. 462, 473 (D.N.J. 1998). Because no party
briefed this issue and because the Court could find no authority to suggest the limitations period
here is jurisdictional, the Court considers the issue waived by the Department.

¶¶ 9–11.) His father Joseph requested that Santino receive an independent educational evaluation to determine his current level of functioning. (*Id.* ¶¶ 11, 13.) In March 2014, Palmer approved the request for an evaluation at public expense and in April 2014, Palmer's CEO David Weathington acknowledged in writing that it was Palmer's obligation to pay for Santino's evaluation. (*Id.* ¶¶ 11, 13 & 14.) Santino received an independent neuropsychological evaluation from Dr. Kara Schmidt in August 2014, (*id.* ¶ 15), and Dr. Schmidt submitted an invoice to Palmer totaling $4,000, (*id.* ¶ 16).

Despite agreeing in advance to pay for this evaluation, Palmer ultimately refused to do so. (*Id.* ¶¶ 16, 17.) Joseph filed a due process complaint against Palmer on December 4, 2014 seeking full payment for the evaluation. (*Id.* ¶ 17.) Later that month, after all parties submitted filings but before the hearing officer entered a decision, Palmer permanently closed due to financial difficulties. (*Id.* ¶ 23.) On January 12, 2015, the hearing officer ruled in Joseph's favor, ordered Palmer to pay $4,000 and declared Joseph the prevailing party. (*Id.* ¶ 22.) Palmer, now closed due to insolvency, did not pay for Dr. Schmidt's services.

In June 2015, Joseph's counsel notified the Department of Palmer's failure to pay. (*Id.* ¶¶ 24–25.) Counsel requested that the Department, pursuant to its responsibilities under IDEA to ensure that all children with disabilities receive a free appropriate public education, pay the $4,000 for Santino's evaluation and the accrued attorneys' fees of $6,322.55. (*Id.* ¶¶ 25–26.) The Department agreed to pay for Santino's evaluation but refused to pay the attorneys' fees. (*Id.* ¶¶ 27, 29.)

### III.

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252. Summary judgment is appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

Moreover, "[t]he rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). "When confronted with cross-motions for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Perez v.*

7

*Kwasny*, 159 F. Supp. 3d 565, 569 (E.D. Pa. 2016) (quoting *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003)).

IV.

A.

Under the "American Rule," parties are ordinarily responsible for their own attorneys' fees, regardless of the outcome. *See generally Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015). In fact, there is "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994).

"[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). Supreme Court precedents "thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *see also John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 555 (3d Cir. 2003) (applying *Buckhannon*, 532 U.S. 598, to IDEA fee shifting).

The due process hearing officer ordered Palmer to pay Dr. Schmidt $4,000 and declared Plaintiff the prevailing party. (Due Process Order, at 3, ECF No. 17-3.)

11a

Plaintiff is undoubtedly the prevailing party against Palmer, as the due process order affected a "material alteration of the legal relationship" between Plaintiff and Palmer. If Palmer was still a viable entity, Plaintiff could ask the Court to order Palmer to pay his reasonable attorneys' fees under § 1415(i)(3).

Plaintiff did not, however, prevail against the Department. *Cf. Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant."). The Department was not a party to the due process hearing. Indeed, the hearing officer specifically ordered the following: "Walter D. Palmer Leadership Learning Partners Charter School shall pay Dr. Kara Schmidt the amount of $4,000.00 for completion of the Independent Educational Evaluation." (Due Process Order, at 3, ECF No. 17-3.) The legal relationship between Plaintiff and the Department did not change as a result of this order.

This case is unlike those where the Department was in fact a party to the due process proceeding. In *R.V. v. Rivera*, 220 F. Supp. 3d 588 (E.D. Pa. 2016), after Palmer closed, a student's mother filed two IDEA due process complaints (one against Palmer and one against the Department) alleging that her child was denied a free appropriate public education. *Id.* at 589–90. The mother later sued in federal court challenging the decision of the hearing officer that her claim against the Department was moot; she also asked the court to order attorneys' fees against the Department. The court denied the Department's motion to dismiss the claim for attorneys' fees reasoning that "once an SEA is properly subject to an IDEA due process complaint, it risks a judgment

9

12a

imposing attorneys' fees should its opponent attain prevailing party status." *Id.* at 595. Here, unlike in *R.V.*, the Department was not properly subject to an IDEA due process complaint.

The Department paid $4,000 for Santino's evaluation after Palmer closed because, under IDEA, it has the ultimate responsibility to ensure every disabled child receives a free appropriate public education. *See Charlene R.*, 63 F. Supp. at 513; *see also* 20 U.S.C. §§ 1412(a)(11)(A), 1413(g)(1); *Kruelle*, 642 F.2d 687, 696 (3d Cir. 1981). But IDEA, not the due process hearing, compelled this result; the due process hearing did not create a "material alteration of the legal relationship" between Plaintiff and the Department.

### B.

Plaintiff relies almost entirely on *Charlene R. v. Solomon Charter School*, 63 F. Supp. 3d 510 (E.D. Pa. 2014), though counsel acknowledged at oral argument that the case "doesn't get [the Plaintiff] completely home . . . because it didn't have to decide this issue." (Tr. of Hr'g, at 50:2–8.)  In *Charlene R.*, the parents of a disabled student filed a due process complaint against Solomon charter school alleging that their child was denied a free appropriate public education. *Id.* at 512.  Before a due process hearing officer could rule on the complaint, Solomon and the parents entered into a resolution agreement pursuant to 20 U.S.C. § 1415(f)(1)(B).  Solomon closed two weeks later and failed to make payments under the agreement.  The parents thereafter sued Solomon and the Department and sought to have the court enforce the resolution agreement against the Department. *Id.*

The Department moved to dismiss the parent's suit, arguing, *inter alia*, that it was not a party to the resolution agreement. The court denied the Department's motion. After establishing that the SEA is ultimately responsible for ensuring that disabled children receive a free appropriate public education, the court concluded that if discovery revealed that the SEA was insolvent, the child would be denied a free appropriate public education and therefore IDEA and case law would support ordering the SEA to comply with the resolution agreement. *Id.* at 519.

*Charlene R.* held that an SEA "retains primary responsibility to ensure that all children with disabilities receive the education that is their right under the IDEA." 63 F. Supp. 3d at 513. It did not hold that the Department must indemnify all liabilities for failed charter schools. Instead, the court expressly limited its ruling and stated that whether an SEA is liable for attorneys' fees was "not a comparable inquiry" to the issue before it, namely, whether an SEA is ultimately responsible for providing a free appropriate public education. *Id.* at 515 n.2.

## C.

Plaintiff also argues that attorney fee shifting is integral to a free appropriate public education under IDEA. He contends that while parents are not required to hire an attorney under any of the three proceedings discussed above (due process, state complaint or formal mediation), in practice, an attorney is necessary for success, and IDEA's attorney fee shifting provisions provide families with access to effective counsel. As a practical matter, Plaintiff's position is understandable. As a legal matter, it is unsupported.

11

14a

Congress would have mandated it as it has done in countless other federal statutes. *See, e.g.,* Fair Labor Standards Act, 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added)); Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("[A] court *shall award to a prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified." (emphasis added)); Clayton Act, 15 U.S.C. § 15(a) ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court . . . and *shall recover* threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." (emphasis added)); Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3); Truth in Lending Act, 15 U.S.C. § 1640(a)(3). That IDEA's fee shifting is discretionary indicates that Congress did not believe fee shifting was integral to the law's guarantee of a free appropriate public education. IDEA's structure confirms this. The statute provides extensive procedural safeguards, including various avenues to settle disputes under IDEA: a due process hearing, a state complaint and formal mediation. While counsel may be beneficial in navigating all of these routes, IDEA does not recognize the necessity of legal representation, much less guarantee payment for it.

V.

The Supreme Court recently emphasized that IDEA does not "effectively empower[ ] judges to elaborate a federal common law of public education." *Endrew F.,*

13

15a

Plaintiff quotes out of context an unpublished, out-of-circuit, district court decision, *P.D. v. Mt. Vernon Comm. Sch. Corp.*, 2008 WL 1701877 (S.D. Ind. Apr. 10, 2008), to purportedly show that at least one court has held that fee shifting is integral to a free appropriate public education. *P.D.*, however, did not so hold—Plaintiff repeatedly quotes or cites the court's *description* of the plaintiff's argument as if it were the court's holding.

In *P.D.*, while the court did acknowledge general public policy purposes behind the fee-shifting provisions in IDEA—including those raised by the Plaintiff here—it clarified that these considerations were "not the only public policy at stake." *Id.* The court then explained that "unlike other civil rights cases that often have broader implications for other cases, IDEA suits usually involve only very targeted disputes over the fine-tuning of IEPs affecting only one student in one district." *Id.* (quotation omitted). And because "the financial demands on public school districts are getting harder and harder to meet" courts should pay "close attention" to "requests for attorneys' fees which drain taxpayer-funded districts of their ability to meet other needs." *Id.* (quotation omitted). Far from supporting Plaintiff's contention that fee shifting is integral to a free appropriate public education, *P.D.* articulates reasons why courts should carefully review requests for attorneys' fees.

Congress did not regard fee shifting as integral to a free appropriate public education under IDEA. The statute provides for discretionary fee shifting—a court "in its discretion, may award reasonable attorneys' fees."[3] 20 U.S.C. § 1415(i)(3)(B). If, as Plaintiff contends, fee shifting was *integral* to a free appropriate public education,

---

[3]   Of course, the Court may award fees in its discretion *only* to a party who first qualifies as a prevailing party. *See supra* section IV.A.

12

16a

137 S. Ct. at 998. The circumstances giving rise to this dispute may not have been

reasonably foreseeable to the legislative branch when IDEA was written, but the Court

cannot fashion a remedy Congress did not provide or perhaps even contemplate.

Plaintiff did not prevail against the Department at the due process hearing. While

IDEA requires SEAs like the Department to provide a free appropriate education when

a charter school fails, the law does not provide for fee shifting under the unique facts of

this case.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

17a